IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KIMBERLY ALSIP, et al. | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. L-09-1987 |
| | * | |
| LOUISVILLE LADDER, INC. | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*

## **MEMORANDUM**

This is a product liability case. Kimberly and Matthew Alsip (the "Alsips") filed suit against Louisville Ladder, Inc. ("Louisville") after Ms. Alsip suffered a partial toe amputation while using a ladder designed and manufactured by Louisville. Louisville filed a Motion for Summary Judgment (Paper No. 24). A hearing was held on June 3, 2010. For the reasons stated herein, the Motion will be GRANTED in part and DENIED in part.

**I.     BACKGROUND**

In 2008, the Alsips purchased a four foot aluminum step ladder designed, manufactured, and sold by Louisville from a Walmart.[1] The ladder had three steps and a top platform. Warning stickers on the ladder clearly stated that the user was not to stand on or above the third step from the floor and instructed the user to wear clean, non-leather soled, slip-resistant shoes.

On August 28, 2008, Ms. Alsip was standing on the third step in her bare feet placing items in her attic. Ms. Alsip stepped down from the third step with her left foot first, placing it

---

[1] The ladder had been manufactured in December 2007.

on the second step. She then brought her right foot down, grazed the second step,[2] and landed on the inside corner of the right side of the first step.[3] Ms. Alsip felt a sharp pain and noticed that the bottom of her foot had been lacerated. Upon further inspection, Ms. Alsip realized that a piece of the fourth toe on her right foot had been severed and was attached to the inside corner of the right side of the first step. To close the injury, a doctor had to amputate the remaining top portion of Ms. Alsip's toe.

## II. STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

---

[2] Louisville contends that this "misstep" constitutes a fall or loss of balance. Ms. Alsip testified that she never experienced a loss of control in her descent. Taking the facts in the light most favorable to the Alsips, the Court must accept that Ms. Alsip did not fall or lose her balance.
[3] The edges of each step extended beyond the vertical siderails, leaving an exposed edge. See Pl. Ex. 2C.

### III. ANALYSIS

#### A. Design Defect Claim

To establish strict liability for a design defect under Maryland law, the plaintiff has the burden of proving that:

> (1) the product was in a defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition.

Phipps v. General Motors Corp., 363 A.2d 955, 958 (Md. 1976). An unreasonably dangerous product is one that is "dangerous 'to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" Halliday v. Sturm, Ruger & Co., Inc., 792 A.2d 1145, 1150 (Md. 2002) (quoting Restatement (Second) of Torts, §402A, Comment g). If a product is not unreasonably dangerous when used in a foreseeable manner, then it is not defective. See Lightolier v. Hoon, 876 A.2d 100, 109 (Md. 2005); Simpson v. Standard Container Co., 527 A.2d 1337, 1341 (Md. Ct. Spec. App. 1987).

Under Maryland law, misuse of a product may defeat recovery by negating claims that the product was unreasonably dangerous and that the product's defect was the proximate cause of the plaintiff's injury.[4] Ellsworth v. Sherne Lingerie, Inc., 495 A.2d 348, 356 (Md. 1985). Misuse is not an affirmative defense to be proven by the defendant. Id. Rather, the jury can consider any misuse of the product in deciding whether the plaintiff has met her burden on issues of dangerousness and proximate cause. Misuse includes a failure to heed a manufacturer's

---

[4] The Ellsworth court stated that misuse "occurs when the product in question is used in a manner not reasonably foreseeable to the manufacturer." Ellsworth, 495 A.2d at 355.

3

warning. <u>Hood v. Ryobi American Corp.</u>, 181 F.3d 608, 612 (4th Cir. 1999); <u>Lightolier v. Hoon</u>, 876 A.2d 100, 110 (Md. 2005).

Louisville argues that, because she used the ladder in violation of its warnings by standing on the third step in her bare feet, Ms. Alsip misused the ladder. Louisville contends that this misuse prevents a finding that the ladder was unreasonably dangerous and that its alleged defect was the proximate cause of her injuries. The Alsips argue that the warnings, which they contend warn only of loss of balance, do not make the ladder safe for its intended use because the ladder was designed with unreasonably sharp exposed edges.[5] They also contend that a reasonable jury could find the warnings inadequate to notify the user that he or she must wear shoes, as opposed to bare feet, while using the ladder. Further, they point out that Ms. Alsip could have suffered the same injury had she been wearing an open toed shoe such as a sandal. Thus, the warning to wear shoes would not necessarily have prevented the injury if followed.

The jury will be instructed as to the misuse doctrine. The jury could find that Ms. Alsip misused the ladder and that her misuse prevents a finding that the ladder was unreasonably dangerous and/or that any defect in the ladder was the proximate cause of her injury. The jury could also conclude, however, that the misuse (incurring a risk of falling) did not cause the injury she suffered (a laceration injury to her foot). Thus, a trial is necessary to determine whether the ladder had a sharp, exposed edge and whether that edge made the ladder unreasonably dangerous and/or was the proximate cause of her injury.

---

[5] The Alsips note that the American National Standard for Ladders—Portable Metal—Safety Requirements, A 14.2—2007, § 5—General Requirements states that metal ladders shall be designed free of structural defects or accident hazards such as sharp edges or burrs. Standards promulgated by the American National Standards Institute may constitute relevant evidence in regard to the standard of care in a particular case and whether a product was unreasonably dangerous. <u>Alevromagiros v. Hechinger Co.</u>, 993 F.2d 417, 420 (4th Cir. 1993); <u>Kent Village Assocs. Joint Venture v. Smith</u>, 657 A.2d 330, 337 (Md. Ct. Spec. App. 1995).

### 1. Unreasonably Dangerous

The warnings on the ladder instructed the user not to stand on or above the third step and to wear non-leather soled, slip-resistant shoes. Viewing the facts in the light most favorable to the Alsips, a reasonable jury could find that (i) the warnings were designed to prevent a loss of balance, (ii) Ms. Alsip did not lose her balance, and (ii) she suffered an amputation injury when her toe came into contact with an unreasonably sharp exposed edge. Although a warning need not list every possible danger that may flow from the use of a product, an adequate warning must make a product reasonably safe for its intended use. See Hood, 181 F.3d at 610–11, 612 ("[A] product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."); see also id. at 612 (citing Restatement (Third) of Torts, § 2, cmt. *l*. (stating that warnings will not "inevitably defeat" a plaintiff's claim and "should not absolve a manufacturer of the duty to design reasonable safeguards for its products")).

In some cases, a plaintiff's failure to heed a warning will result in summary judgment for the defendant. This occurs when the injury is of the type that the warning was designed to prevent. For example, in Lightolier v. Hoon, plaintiff's strict product liability claim was defeated on summary judgment because a warning not to place insulation within three inches of a recessed light fixture for risk of fire was not heeded, thereby resulting in a fire. 876 A.2d at 104. In the instant case, the warnings are ostensibly intended to guard against falling off the ladder. Louisville would be entitled to summary judgment if Ms. Alsip had fallen off the ladder, injuring herself. A reasonable jury, however, might find that the warning was inadequate because it was not designed to guard against a laceration injury to the foot. In other words, the

jury could conclude that a reasonable person reading the warning would not be alerted to the risk of laceration from a sharp edge.

Accordingly, in the instant case, Ms. Alsip's failure to heed the warnings does not negate, at this stage, a claim that the ladder was unreasonably dangerous. A genuine question of fact remains as to whether the ladder was unreasonably sharp, and therefore, defective.

### 2. Proximate Cause

The Ellsworth court stated that misuse of a product must be the sole proximate cause, or an intervening or superseding cause, of the injury in order to negate that element of the plaintiff's claim. Ellsworth, 495 A.2d at 355. Here, a reasonable jury might find that an unreasonably sharp edge, rather than a misstep cause by standing too high on the ladder and not wearing shoes, was the proximate cause of the injury.

These points boil down to the Alsips' argument that they are entitled to argue before a jury that the ladder was not safe for its intended use due to an unreasonably sharp edge, despite Ms. Alsip's failure to heed the posted warnings. The Court agrees. Accordingly, Louisville's motion for summary judgment on the design defect claim is DENIED.

### B.  Manufacturing Defect Claim

To sustain a manufacturing defect claim, a plaintiff must present some evidence that the product was not manufactured in accordance with the manufacturer's specifications. Shreve v. Sears, Roebuck & Co., 166 F. Supp. 2d 378, 411 (D. Md. 2001). Here, in its motion for summary judgment, Louisville presents expert testimony that the Alsips' ladder was designed in accordance with Louisville's specifications. The Alsips do not oppose this point. Accordingly, summary judgment on this claim shall be GRANTED.

### C. Loss of Consortium Claim

Under Maryland law, a loss of consortium claim is a derivative claim and may flow from a strict product liability claim. <u>Klein v. Sears, Roebuck & Co.</u>, 608 A.2d 1276, 1284 (Md. Ct. Spec. App. 1992). Because the Alsips' claim that the ladder was defectively designed survives summary judgment, this claim also survives for a jury's consideration. Accordingly, summary judgment on this claim is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Louisville's Motion for Summary Judgment (Paper No. 24) is GRANTED in part and DENIED in part.

It is so ORDERED this 21st day of June, 2010.

                                                  /s/
                                      Benson Everett Legg
                                      United States District Judge